IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VITO J. FENELLO, JR., and
BEVERLY H. FENELLO,

                                    Plaintiffs,

          v.                                                1:11-cv-4139-WSD

BANK OF AMERICA, N.A., and
THE BANK OF NEW YORK
MELLON (as Trustee for CWALT,
Inc.),

                                    Defendants.

## OPINION AND ORDER

This matter is before the Court on Vito J. Fenello, Jr. and Beverly H.

Fenello's (collectively, "Plaintiffs") Motion for Leave to Amend their Complaint

[30].  Also before the Court is Bank of America, N.A. ("BANA") and The Bank of

New York Mellon, as Trustee for CWALT, Inc.'s ("BONYM") (together,

"Defendants") Motion to Dismiss [28] Plaintiffs' Amended Complaint [26].

## I.    BACKGROUND

On January 30, 2007, Plaintiffs obtained a loan from Pulte Mortgage, LLC

("Pulte") in the amount of $181,352.00, to purchase real property located at 289

Balaban Circle, Woodstock, Georgia (the "Property").  (Am. Compl. ¶ 7; Pls'

Ex. 13).[1]  Repayment of Plaintiffs' loan was secured by a deed ("Security Deed") to the Property, by which Plaintiffs granted to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Pulte, title to the Property, including the power of sale.  (Security Deed [28.2] at 1-3).[2]

In late 2007, Plaintiffs, who are real-estate professionals wholly compensated through commissions on real-estate transactions, experienced a severe drop in income due to the financial collapse of the national economy.  (Am. Compl. ¶ 8).

In early 2008, Plaintiffs contacted BANA – the "apparent loan servicer at the time" – and inquired about available options involving their loan, "including a mortgage modification, a short sale, and a deed in lieu of foreclosure."  (Id. ¶ 9).  BANA responded that relief was not available until Plaintiffs had missed at least

_____

[1]  Plaintiffs' Amended Complaint incorporates the exhibits attached to their Original Complaint and adds Plaintiffs' Exhibits 21-23.

[2]  A document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed.  Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (explaining that "'[u]ndisputed' in this context means that the authenticity of the document is not challenged"); Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and these documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal.").  The Security Deed and its assignment from MERS to BONYM attached to Defendants' motion to dismiss are central to Plaintiffs' claims and Plaintiffs do not challenge the authenticity of the documents.

two monthly payments, and suggested that Plaintiffs skip the next two payments

and then contact BANA again to apply for relief under the Home Affordable

Modification Program ("HAMP").  (Id. ¶¶ 10-11).  Relying on this suggestion,

Plaintiffs skipped the next two monthly payments and on April 24, 2010, applied

for relief under the HAMP.  (Id. ¶ 12).[3]  Plaintiffs called BANA multiple times but

did not receive a decision on their HAMP application.  (Id. ¶ 14).

On April 5, 2011, Plaintiffs received a letter from Shuping, Morse & Ross,

LLP ("Shuping"), on behalf of BAC Home Loans Servicing, LP ("BACHL").  (Id.

¶ 15; Pls' Ex. 1).  The letter states that BACHL is the servicer of Plaintiffs' loan,

BONYM is the creditor, the principal balance of Plaintiffs' loan is $179,488.21,

and foreclosure proceedings would be forthcoming.  (Pls' Ex. 1).  Shuping sent

Plaintiffs similar letters on April 25 and May 5, 2011, containing the same

information (Pls' Exs. 3, 4).

On April 13, 2011, MERS, as nominee for Pulte, assigned to BONYM

("Assignment") "all right, title, interest, powers and options in, to and under [the

Security Deed] as well as the land described therein and the indebtedness secured

thereby."  (Assignment [28.3] at 1).

On April 25, 2011, Plaintiffs sent Shuping a "Demand for Proof of

_____

[3]  Plaintiffs' Complaint is silent regarding any actions they took concerning their
loan between early 2008 and April 2010.  (Am. Compl. ¶¶ 9-12).

Standing," requesting that Shuping provide documentation to support that

BONYM is "the current beneficiary, . . . Holder in Due Course, and that it has

[s]tanding to pursue collections and/or foreclosure in this matter."  (Pls' Ex. 2).

On May 5, 2011, Shuping sent Plaintiffs a Foreclosure Advertisement and

Notice of Sale Under Power ("May 5th NSUP"), which states:

> By virtue of the power of sale contained in a Deed to Secure Debt by
> [Plaintiffs] to [MERS] as nominee for Pulte . . .  and securing a Note
> in the original principal amount of $181,352.00, last transferred to
> [BONYM], there will be sold at a public outcry . . . on the first
> Tuesday in June, 2011, by [BONYM] as Attorney-in-Fact for
> [Plaintiffs] [the Property].
> . . .
> The indebtedness secured by said Deed to Secure Debt having been
> declared due and payable because of default in the payment of the
> indebtedness secured thereby, this sale will be made for the purpose of
> paying the same and all expenses of sale . . . .
> . . .
> Pursuant to O.C.G.A. § 44-14-162.2, the name, address and telephone
> number of the individual or entity who shall have the full authority to
> negotiate, amend or modify all terms of the above described mortgage
> is as follows: [BACHLS].  The foregoing notwithstanding, nothing in
> O.C.G.A. § 44-14-162.2 shall be construed to require [BACHLS] as
> servicer for [BONYM] to negotiate, amend or modify the terms of the
> Deed to Secure Debt described herein.
> . . .

(May 5th NSUP, Pls' Ex. 21 [26.2] at 2-3).  The May 5th NSUP was published in

the Cherokee Tribune on May 5, 2011.  (Am. Compl. ¶ 68).

On June 6, 2011, Shuping notified Plaintiffs that the foreclosure sale

scheduled for the next day had been withdrawn.  (Pls' Ex. 5).

4

On June 13, 2011, Plaintiffs received from BANA a "Special Forbearance Agreement" modification offer.  (Am. Compl. ¶ 19).  The proposed modification would have more than doubled Plaintiffs' original monthly, interest-only payment.  (Id.).  BANA told Plaintiffs that they could accept the modification or refuse it and re-apply in thirty days.  (Id. ¶ 20).

On July 1, 2011, BACHLS merged with and into its parent company, BANA.[4]

On July 7, 2011, Plaintiffs received a letter (the "July 7th Letter") from BANA stating that "[e]ffective July 1, 2011, the servicing of home loans by [its] subsidiary – BAC Home Loans Servicing, LP, transfers to its parent company – Bank of America, N.A."  (Am. Compl. ¶ 21; Pls' Ex. 7).  The July 7th Letter states that "[u]nder the federal Fair Debt Collections [sic] Practices Act and certain state laws, [BANA] is considered a debt collector" and "that this communication is from a debt collector attempting to collect a debt . . . ."  (July 7th Letter at 1).  The July 7th Letter asserts that, as of July 7, 2011, Plaintiffs owes $198,432.72 to "BANK OF NY (CWALT 2007-5CB) G1" and that Plaintiffs are required to dispute the debt within thirty (30) days or else BANA would assume it was valid.  (Id. at 3).

---

[4]  See Am. Compl. ¶ 2; September 29, 2011, Foreclosure Advertisement and Notice of Sale Under Power (Pls' Ex. 22 [26.3] at 3); see also http://www.occ.gov/static/interpretations-and-precedents/jul11/ca1003.pdf (last visited Feb. 15, 2013).

The July 7th Letter further states that if Plaintiffs dispute the debt, BANA will obtain verification of the debt and mail it to them.  (Id.).

On July 27, 2011, "Plaintiffs sent a certified letter disputing the debt, indicating that the purported creditor was unknown to Plaintiffs, and demanding that Bank of America provide 'documentation that BANK of NY is the legal holder in due course, along with proof of each and every transfer in the chain of assignments that resulted in BANK of NY attaining this status.'"  (Am. Compl. ¶ 22; Pls' Ex. 8).  Plaintiffs claim they never received verification of the debt from BANA.  (Am. Compl. ¶ 23).

On September 8, 2011, Shuping, on behalf of BANA, sent Plaintiffs a letter (the "September 8th Letter") seeking to collect on Plaintiffs' indebtedness to BANA and stating that "[i]t is anticipated that foreclosure proceedings will be forthcoming."  (Id. ¶ 30; Pls' Ex. 9).  The September 8th Letter states also that "[u]nless you notify us within 30 days from the date of your receipt of this notice that you dispute the validity of this debt or any portion thereof, we will assume the debt is valid."  (Pls' Ex. 9).

On September 14, 2011, Plaintiffs replied to Shuping's September 8th Letter and again demanded "written documentation that CWALT, Inc. is indeed the current creditor/beneficiary, that it is indeed the Holder in Due Course, and that it

has Standing to pursue collections and/or foreclosure in this matter."  (Am. Compl. ¶ 32; Pls' Ex. 10).

On September 19, 2011, Shuping replied to Plaintiffs' demand for verification of their indebtedness and provided a "Payoff Demand Statement" from BANA and a copy of the promissory note Plaintiffs signed when they obtained their loan.  (Pls' Exs. 11-13).

On September 26, 2011, Plaintiffs replied to the verification of indebtedness provided by Shuping, asserted that it was deficient, and stated that the Fair Debt Collection Practices Act requires Shuping and Defendants to "cease collection efforts until [they] are able to verify [their] claims" of indebtedness against Plaintiffs.  (Am. Compl. ¶ 38; Pls' Ex. 14).

On September 29, 2011, Shuping sent Plaintiffs another demand letter stating that "foreclosure proceedings are being instituted in the manner provided in the Promissory Note and Deed to Secure Debt;" seeking to collect on their indebtedness to BANA; and stating "you have 10 days from the date of your receipt of this notice to pay the entire principal balance and accrued interest due on the Promissory Note" without being required to also pay attorney's fees.  (Am. Compl. ¶ 39; Pls' Ex. 15).

Also on September 29, 2011, Shuping sent Plaintiffs a second Foreclosure

Advertisement and Notice of Sale Under Power ("September 29th NSUP"), which

states:

> By virtue of the power of sale contained in a Deed to Secure Debt by
> [Plaintiffs] to [MERS] as nominee for Pulte . . . and securing a Note
> in the original principal amount of $181,352.00, last transferred to
> [BONYM] by Assignment filed for record May 3, 2011 . . . there will
> be sold at a public outcry . . . on the first Tuesday in November, 2011,
> by [BONYM] as Attorney-in-Fact for [Plaintiffs] [the Property].
> . . .
> The indebtedness secured by said Deed to Secure Debt having been
> declared due and payable because of default in the payment of the
> indebtedness secured thereby, this sale will be made for the purpose of
> paying the same and all expenses of sale . . . .
> . . .
> Pursuant to O.C.G.A. § 44-14-162.2, the name, address and telephone
> number of the individual or entity who shall have the full authority to
> negotiate, amend or modify all terms of the above described mortgage
> is as follows: [BANA]. The foregoing notwithstanding, nothing in
> O.C.G.A. § 44-14-162.2 shall be construed to require [BANA] as
> servicer for [BONYM] to negotiate, amend or modify the terms of the
> Deed to Secure Debt described herein.
> . . .

(September 29th NSUP, Pls' Ex. 22 [26.3] at 2-3). The September 29th NSUP was

published in the Cherokee Tribune on September 29, 2011. (Am. Compl. ¶ 69).

On October 21, 2011, Plaintiffs, proceeding together *pro se*, filed this action

in the Superior Court of Cherokee County, Georgia, against Shuping, BANA, and

BONYM, alleging violations of various federal and state laws pertaining to the

attempted foreclosure of the Property. (Notice of Removal ¶¶ 1-3; Compl. [1.1 at

3-24] passim).[5]  Plaintiffs asserted claims for violations of the federal Fair Debt

Collection Practices, Truth in Lending, and Real Estate Settlement Procedures

Acts; a violation of a federal Consent Order entered into by the Office of the

Comptroller of Currency; fraud; "bad faith;" equitable estoppel;

"defective/fraudulent assignment;" "failure to prove holder in due course status;"

"failure to prove damages;" "failure to prove standing;" "defective foreclosure

closing notice;" "direct contradiction by verbal representation;" and a claim for

injunctive relief.  Plaintiffs sought a temporary restraining order "and/or"

preliminary injunction enjoining foreclosure; a permanent injunction, until

"standing of the Defendants" can be verified; production of the "Original

Promissory note, with all 'wet letter' assignments and allonges;" proof of "any

assignments, liens or any other instruments that prove any claims by an alleged

Holders in Due Course;" validation of the debt; all "court costs and court related

fees;" and any other relief the Court deemed just and proper.  (Compl. at 22-23).

---

[5] A "document filed pro se is 'to be liberally construed,' . . . , and 'a pro se
complaint, however inartfully pleaded, must be held to less stringent standards than
formal pleadings drafted by lawyers.'" Erikson v. Pardus, 551 U.S. 89, 94 (2007)
(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Mederos v. United
States, 218 F.3d 1252, 1254 (11th Cir. 2000) (discussing that pro se filings are
entitled to liberal construction); Powell v. Lennon, 914 F.2d 1459, 1463 (11th
Cir. 1990).  Although the Court construes pro se documents liberally, they must
also comply with the procedural rules that govern pleadings.  See McNeil v. United
States, 508 U.S. 106, 113 (1993).

On November 30, 2011, BANA and BONYM removed the Cherokee County action to this Court.  (Notice of Removal at 1).

On December 6, 2011, the parties consented to the dismissal of Shuping [4].

On December 7, 2011, Defendants moved to dismiss Plaintiffs' Complaint for failure to state a claim for relief [6].

On July 17, 2012, the Court granted Defendants' motion to dismiss with respect to all but one of Plaintiffs' claims ("July 17th Order") [24].  The Court concluded that, with the exception of their claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), all of Plaintiffs' claims were implausible, unfounded and without merit, and that amendment of these claims would be futile.  The Court permitted Plaintiffs an opportunity to amend their FDCPA claim and ordered:

> The amended complaint shall: (1) not exceed fifteen pages; (2) not include any claims that have been dismissed in this action; (3) explain how each Defendant qualifies as a "debt collector" within the meaning of the Act; (4) specify which section of the FDCPA was violated, how it was violated, when it was violated, and by which Defendant; and (5) clearly state the relief requested.

(July 17th Order at 51).

On August 2, 2012, Plaintiffs filed their Amended Complaint [26], reasserting their FDCPA claim against BANA.  Plaintiffs, without seeking leave to

do so, also asserted additional claims for attempted wrongful foreclosure and negligence against BANA and BONYM.

On August 20, 2012, Defendants moved to dismiss Plaintiffs' Amended Complaint [28].  Defendants argue that the Plaintiffs again fail to state a claim for relief under the FDCPA, and that the Court should dismiss their two new claims because the July 17th Order allowed Plaintiffs to amend only their FDCPA claim. Defendants contend that, even if Plaintiffs had sought leave to assert these claims, the Amended Complaint does not state viable claims for attempted wrongful foreclosure or negligence.

In response, on September 4, 2012, Plaintiffs moved for leave to pursue their attempted wrongful foreclosure and negligence claims asserted in the Amended Complaint [30].

## II.   DISCUSSION

### A.   Defendants' Motion to Dismiss

#### 1.   Legal Standard

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled.  Dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the

cause of action."  Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.,

992 F.2d 1171, 1174 (11th Cir. 1993).

In considering a motion to dismiss, the Court accepts the plaintiff's

allegations as true and considers the allegations in the complaint in the light most

favorable to the plaintiff.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984);

Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007); see also Bryant v.

Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) ("At the motion to

dismiss stage, all well-pleaded facts are accepted as true, and the reasonable

inferences therefrom are construed in the light most favorable to the plaintiff.").

The Court, however, is not required to accept a plaintiff's legal conclusions.  See

Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)), abrogated on other grounds by

Mohamad v. Palestinian Authority, 132 S. Ct. 1702 (2012).  Nor will the Court

"accept as true a legal conclusion couched as a factual allegation."  See Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Ultimately, the complaint is

required to contain "enough facts to state a claim to relief that is plausible on its

face."  Twombly, 550 U.S. at 570.[6]

---

[6]  The Supreme Court explicitly rejected its earlier formulation for the Rule
12(b)(6) pleading standard: "'[T]he accepted rule [is] that a complaint should not
be dismissed for failure to state a claim unless it appears beyond doubt that the

To state a claim to relief that is plausible, the plaintiff must plead factual content that "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557). "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).[7]

---

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Twombly, 550 U.S. at 577 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Court decided that "this famous observation has earned its retirement." Id. at 563.

[7] Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

2.      <u>Analysis</u>

In its July 17th Order, the Court allowed Plaintiffs to amend their Complaint regarding their FDCPA claim.  Because Plaintiffs were required to seek Defendants' consent or leave of Court before asserting additional claims in their Amended Complaint, <u>see</u> Fed. R. Civ. P. 15, the Court considers first whether Plaintiffs have asserted a viable FDCPA claim.

Plaintiffs claim that BANA failed to verify the debt Plaintiffs owed on their mortgage, in violation of Section 1692g(b).  Section 1692g(b) provides that "if a consumer notifies a debt collector in writing that a debt is disputed, the collector must cease collection of that debt until the debt collector verifies the debt and mails a copy of the verification to the consumer."  <u>Warren v. Countrywide Home Loans, Inc.</u>, 342 F. App'x 458, 460 (11th Cir. 2009) (citing 15 U.S.C. § 1692g(b)).

To state a claim under the FDCPA, a plaintiff must establish, among other things, that the defendant is a "debt collector."  <u>Reese v. Ellis, Painter, Ratterree & Adams, LLP</u>, 678 F.3d 1211, 1216 (11th Cir. 2012); <u>Buckley v. Bayrock Mortg. Corp.</u>, No. 1:09-cv-1387-TWT, 2010 WL 476673, at *6 (N.D. Ga. Feb. 5, 2010). The FDCPA clearly defines the term "debt collector" and excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was

originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person[.]"  15 U.S.C. § 1692a(6)(F).  "[A] debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."  Lacosta v. McCalla Raymer, LLC, No. 1:10-cv-1171-RWS, 2011 WL 166902, at *6 (N.D. Ga. Jan. 18, 2011) (quoting Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)).

Plaintiffs claim that BANA is a debt collector because Plaintiffs' loan already was in default when BACHLS transferred servicing to BANA in July 2011.  Plaintiffs defaulted on their loan obligations in April 2010, when BACHLS was their loan servicer.  In July 2011, BACHLS and BANA merged.  As a result of the merger, BANA acquired "all the property, rights, powers, trusts, duties, and obligations" of BACHLS, including the servicing of Plaintiffs' loan.  See O.C.G.A. § 7-1-536(c) (in a merger, "each party . . . shall cease to exist as a separate entity but shall continue in, and the parties to the [merger] shall be, a single corporation"); Moore v. McCalla Raymer, LLC, 2013 WL 28253, at *2 n.7 (N.D. Ga. Jan. 2, 2013) (recognizing that BANA, as successor-by-merger to BACHLS, stands in the place of BACHLS); see also State Bank & Trust Co. v. Newby, 318 S.E.2d 738, 739 (Ga. Ct. App. 1984) ("[T]he necessity of a formal

transfer or assignment of the property of the constituent bank to the consolidated bank" is eliminated by the statute).  That the merger occurred after Plaintiffs' default does not change that, by operation of law, BANA now stands in the place of BACHLS as Plaintiffs' loan servicer.[8]  BANA is not a "debt collector" for the purpose of Section 1692g.  See Brown v. Morris, 243 F. App'x 31, 34 (5th Cir. 2007) (when defendant acquires debt though its merger with previous creditor of plaintiff rather than via specific assignment, debt was not "obtained" while it was in default; defendant therefore was not a debt collector under FDCPA); Forester v. Bank of America, N.A., No. 11-0160-CG-M, 2012 WL 3206471, at *7 (S.D. Ala. Aug. 7, 2012) (even though it obtained plaintiff's debt through assignment when plaintiff's loan was already in default, where Countrywide merged into BACHLS, BACHLS was not a debt collector under FDCPA); Meyer v. Citimortgage, Inc., No. 11-13432, 2012 WL 511995, at *7 (E.D. Mich. Feb. 16, 2012) (defendant not a debt collector under FDCPA because "[it] is the successor by merger to . . . the originating lender and mortgagee, and therefore it is impossible for the loan to have been in default at the time [defendant] received its interest"); Dues v. Capital

---

[8]  This is further supported by Plaintiffs' reference to "Bank of America, N.A. (fka [formerly known as] BAC Home Loan Servicing, LP)."  (Am. Compl. ¶ 2).  The September 29th NSUP states that "the entity who shall have the full authority to negotiate, amend or modify all terms of [Plaintiffs' loan is]: Bank of America, N.A., successor by reason of merger with BAC Home Loans Servicing, L.P." (September 29th NSUP at 3).

One, N.A., No. 11-cv-11808, 2011 WL 3799762, at *4 (E.D. Mich. Aug. 8, 2011)

(debt not "obtained" under FDCPA through merger); Centennial Bank v. Noah

Group, LLC, 755 F. Supp. 2d 1256, 1260 (S.D. Fla. 2010) ("Centennial Bank is

not a debt collector – it arguably originated the debt as a merged entity with [the

original lender]"); Sprague v. Neil, No. 1:05-CV-1605, 2007 WL 3085604, at *3

(M.D. Pa. Oct. 19, 2007) ("By way of merger . . . Citibank assumed all rights and

property, including Plaintiff's debt, as its own and thus stands in the shoes of the

previous two banks[;] . . . it was not collecting debt owed to a third party as a debt

collector.").  Plaintiffs fail to state a claim for relief under Section 1692g(b), and

this claim is required to be dismissed.[9]

---

[9]  Plaintiffs assert that BANA is a debt collector because BANA admitted in its
July 7th Letter that under the FDCPA, BANA "is considered a debt collector."
(Am. Compl. ¶ 50; Pls' Ex. 7).  The Court has already considered and rejected this
argument and it is clear that a statement like this, without more, is not sufficient to
establish that BANA is a debt collector under the FDCPA.  (July 17th Order at 15).
The July 7th Letter does not demand payment, and that Plaintiffs admit that the
July 7th letter was not a "dual purpose letter," rather it "was to notify them that the
servicing of the Promissory Note in question had been transferred, and to give the
Plaintiffs the opportunity to dispute the debt" (Pls' Resp. at ¶¶ 3-7), further
undercuts Plaintiffs' argument.  See Reese, 678 F.3d at 1217 (where law firm
argued it was not a debt collector because it was enforcing a security interest,
similar language in a collection notice, and a clear demand for payment, were
sufficient to show that notice was related to the collection of a debt; complaint
alleged firm was a debt collector because it regularly attempted to collect debt
owed to others by sending similar collection notices to more that 500 people per
year).

Plaintiffs next allege that BANA violated Section 1692f(6)(A), which prohibits taking or threatening to take nonjudicial action if there is no present right to possession of the property claimed as collateral through an enforceable security interest.  15 U.S.C. § 1692f(6).[10]  For the purposes of Section 1692f(6), the term "debt collector" also includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  Id. at § 1692a(6).

While BANA may qualify as a "debt collector" for the purposes of Section 1692f(6), Plaintiffs fail to allege any facts to support that BANA does not have a present right to possession of the Property.  The Security Deed and Assignment evidence BONYM's right to possess the Property, and the letters sent to Plaintiffs by Shuping state that Shuping represents BANA as servicer for BONYM, the holder of Plaintiffs' loan and the Security Deed.  The Court notes that Plaintiffs' assertions that "Bank of America, by and through its law firm, on behalf of Mellon Bank, Trustee for CWALT, Inc., initiated foreclosure proceedings against Plaintiffs" (Am. Compl. ¶¶ 66-70), discredits their argument that BANA lacks an

---

[10]  Plaintiffs do not allege that there is no present intention to take the Property, or that the Property is exempt by law.  15 U.S.C. § 1692f(6)(B)-(C).

interest in the Property.[11]  Plaintiffs fail to state a claim for relief under Section

1692f(6), and this claim is required to be dismissed.

     B.    <u>Plaintiffs' Motion for Leave to Amend</u>

     Although the Court's July 17th Order permitted Plaintiffs an opportunity to

amend their FDCPA claim, Plaintiffs were required to obtain leave to assert new

claims in the Amended Complaint.  Fed. R. Civ. P. 15.  Federal Rule of Civil

Procedure 15(a)(2) provides that a court shall freely give leave to amend a pleading

when justice so requires.  Absent "undue delay, bad faith, dilatory motive or undue

---

[11]  To the extent Plaintiffs argue, for the first time in their Response, that BANA does not have a present right to possess the Property because "only a secured creditor may initiate a foreclosure under power of sale" (Pls' Resp. to Memo. [29.1] ¶ 16), Georgia law provides:

> Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised.  . . .  Unless the instrument creating the power specifically provides to the contrary, a personal representative, heir, heirs, legatee, devisee, or successor of the grantee in a mortgage, deed of trust, deed to secure debt, bill of sale to secure debt, or other like instrument, or an assignee thereof, or his personal representative, heir, heirs, legatee, devisee, or successor may exercise any power therein contained; and such powers may so be exercised regardless of whether or not the transfer specifically includes the powers or conveys title to the property described.

O.C.G.A. § 23-2-114.  Any action that BANA took was as servicer for BONYM. The September 29th NSUP states that BONYM is conducting the foreclosure sale, BANA is the entity with full authority to negotiate, amend or modify the terms of Plaintiffs' mortgage, and that nothing in O.C.G.A. § 44-14-162.2 shall be construed to require BANA, as servicer for BONYM, to do so.  (Sept. 29th NSUP at 2-3).

prejudice, leave to amend is routinely granted." Forbus v. Sears Roebuck & Co.,

30 F.3d 1402, 1405 (11th Cir. 1994) (citing Foman v. Davis, 371 U.S. 178, 182

(1962)).

Plaintiffs' Amended Complaint seeks to add claims for attempted wrongful

foreclosure and negligence. Although Plaintiffs argue that they have been diligent,

these claims are based on the May 5, 2011, and September 29, 2011, Foreclosure

Advertisements and Notices of Sale of Power.[12]  These facts were known to

Plaintiffs at the time they filed their Complaint on October 21, 2011, and Plaintiffs

admit that these "new causes of action both referenc[e] the original allegations."

(Pls' Mot. to Amend at 5). Plaintiffs fail to explain why they could not have

asserted these claims in their Complaint. "Such unexplained tardiness constitutes

---

[12]  Plaintiffs allege also that they "now know much more about the unethical and
often illegal servicing and debt collection practices of Bank of America," based on
a "Nevada lawsuit [and] the whistle-blower case in New York." (Pls' Mot. to
Amend at 5). Plaintiffs were not parties to those actions and Plaintiffs fail to show
how the facts of those cases are related to Plaintiffs' allegations here. To the
extent Plaintiffs base their claims on "the settlement with the U.S. Government and
the 49 state attorney generals [sic]," Plaintiffs were not parties to that "settlement"
and therefore lack standing to assert claims based on Defendants' alleged violation
of the settlement agreement. Under Georgia law, the only persons entitled to
enforce a contract are parties to the contract and those third-parties intended to be
beneficiaries of the contract. See O.C.G.A. § 9-2-20(b); Danjor, Inc. v. Corporate
Constr., Inc., 613 S.E. 2d 218, 220 (Ga. Ct. App. 2005). Plaintiffs do not allege
that they are third-party beneficiaries under this "settlement," and even if they
were, that Defendants may have previously engaged in conduct now prohibited by
the settlement is simply not relevant to Plaintiffs' claims here.

undue delay." <u>Carruthers v. BSA Advertising, Inc.</u>, 357 F.3d 1213, 1218 (11th Cir. 2004); <u>see also</u> <u>Maynard v. Bd. of Regents</u>, 342 F.3d 1281, 1287 (11th Cir. 2003) (denial of motion to amend was proper where "there seems to be no good reason why [the plaintiff] could not have made the motion earlier").

Even if it were timely, the claims Plaintiffs now want to assert would be futile.  "[T]he denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." <u>Burger King Corp. v. Weaver</u>, 169 F.3d 1310, 1320 (11th Cir. 1999).  "Because justice does not require district courts to waste their time on hopeless cases, leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim." <u>Mizzaro v. Home Depot, Inc.</u>, 544 F.3d 1230, 1255 (11th Cir. 2008).

> 1.    <u>Attempted Wrongful Foreclosure</u>

To state a claim for attempted wrong foreclosure, Plaintiffs must allege "a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication." <u>Jenkins v. McCalla Raymer, LLC</u>, No. 11-14483, 2012 WL 5259018, at *4 (11th Cir. Oct. 25, 2012) (quoting <u>Aetna Fin. Co. v. Culpepper</u>, 320 S.E.2d 228, 232 (Ga. Ct. App. 1984)).

Here, Plaintiffs have not alleged that the information contained in the May 5th NSUP and September 29th NSUP submitted to the publisher of the Cherokee Tribune was untrue or derogatory.[13]  It is undisputed that Plaintiffs long ago defaulted on their loan obligations and, pursuant to the written terms of the Security Deed, the Property securing that loan is subject to a foreclosure sale.  See Ezuruike v. Bank of New York Mellon, No. 1:11-cv-4030-JEC, 2012 WL 3989961, at *1-2 (N.D. Ga. Sept. 11, 2012) (dismissing attempted wrongful foreclosure claim where "plaintiff makes no plausible allegation that he was not in default and therefore a foreclosure notice suggesting that he was could not falsely impugn the plaintiff's financial condition."); Peterson v. Merscorp Holdings, Inc., No. 1:12-cv-00014-JEC, 2012 WL 3961211, at *5 (N.D. Ga. Sept. 10, 2012) (plaintiffs failed to state a claim for attempted wrongful foreclosure where they alleged only that defendant misrepresented itself as the secured creditor on foreclosure notice); Sellers v. Bank of Am., Nat'l Ass'n, No. 1:11-cv-3955-RWS, 2012 WL 1853005, at *3 (N.D. Ga. May 21, 2012) (dismissing attempted wrongful foreclosure claim; while plaintiffs alleged that the defendants lacked authority to foreclose, plaintiffs failed to allege sufficient facts to show with plausibility that

---

[13]  Even if Plaintiffs could base a claim for attempted wrongful foreclosure on information Defendants provided to "credit reporting agencies" (Am. Compl. ¶ 70), Plaintiffs admit that they are in default and they do not allege that they have made any payments on their loan since April 2010.

they suffered any damage as a result).  Plaintiffs fail to state a claim for attempted

wrongful foreclosure.

> 2.    Negligence

To support a claim for negligence in Georgia, a plaintiff must allege:

> (1) a legal duty to conform to a standard of conduct raised by the law
> for the protection of others against unreasonable risks of harm; (2) a
> breach of this standard; (3) a legally attributable causal connection
> between the conduct and the resulting injury; and (4) some loss or
> damage flowing to the plaintiff's legally protected interest as a result
> of the alleged breach of the duty.

Burch v. Chase Manhattan Mortg. Corp, No. 1:07-cv-0121-JOF, 2008 WL

4265180, at *15 (N.D. Ga. Sept. 15, 2008) (quoting Bradley Ctr., Inc. v. Wessner,

296 S.E.2d 693, 695 (1982)).

Plaintiffs conclusorily allege that Defendants "have a duty imposed by

statute and by contract . . . to avoid unreasonable risk of harm," and rely on the

same conduct offered in support of their claims under the FDCPA and for

attempted wrongful foreclosure.  (Am. Compl. ¶¶ 74-75).  Plaintiffs do not allege

any specific duty owed to them by Defendants,[14] or how Defendants purportedly

breached this duty.  Any injury Plaintiffs may have suffered is solely attributable to

---

[14]  To the extent Plaintiffs claim Defendants owed Plaintiffs a duty based on a
contract, under Georgia law, "[a] defendant's mere negligent performance of a
contractual duty does not create a tort cause of action."  Fielbon Dev. Co. v.
Colony Bank of Houston Cnty., 660 S.E.2d 801, 808 (Ga. Ct. App. 2008).

Plaintiffs' own conduct in defaulting on their loan obligations. Plaintiffs fail to state a claim for negligence. Because Plaintiffs do not state viable claims for wrongful attempted foreclosure or negligence, Plaintiffs' Motion for Leave to Amend is denied as futile.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to Amend their Complaint [30] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss [28] Plaintiffs' Amended Complaint is **GRANTED.**

**SO ORDERED** this 15th day of February, 2013.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE