IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VITO J. FENELLO, JR., and
BEVERLY H. FENELLO,

                **Plaintiffs,**

v.

BANK OF AMERICA, N.A., and
THE BANK OF NEW YORK
MELLON (as Trustee for CWALT,
Inc.),

                **Defendants.**

1:11-cv-4139-WSD

**OPINION AND ORDER**

This matter is before the Court on Vito J. Fenello, Jr. and Beverly H. Fenello's (together, "Plaintiffs") Motion for Reconsideration [36] of the Court's July 17, 2012, and February 15, 2013, Orders [24, 34] dismissing their claims.

## I.  BACKGROUND[1]

This action arises from foreclosure proceedings initiated by Defendants following Plaintiffs' default on, and unsuccessful attempts to modify, their mortgage loan secured by Plaintiffs' real property.

On January 30, 2007, Plaintiffs obtained a loan from Pulte Mortgage, LLC ("Pulte") in the amount of $181,352.00, to purchase real property located at 289

---

[1]  The facts are discussed in greater detail in the Court's July 17th and February 15th Orders.

Balaban Circle, Woodstock, Georgia (the "Property").  (Am. Compl. ¶ 7; Pls' Ex. 13).  Repayment of Plaintiffs' loan was secured by a deed ("Security Deed") to the Property, by which Plaintiffs granted to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Pulte, title to the Property, including the power of sale.  (Security Deed [28.2] at 1-3).

In early 2010, Plaintiffs contacted Bank of America, N.A. ("BANA") – the "apparent loan servicer at the time" – and inquired about available options involving their loan.  (Am. Compl. ¶ 9).  BANA responded that relief was not available until Plaintiffs had missed at least two monthly payments, and suggested that Plaintiffs skip the next two payments and then contact BANA again to apply for relief under the Home Affordable Modification Program ("HAMP").  (Id. ¶¶ 10-11).  Plaintiffs skipped the next two monthly payments and on April 24, 2010, applied for relief under HAMP.  (Id. ¶ 12).  Plaintiffs called BANA multiple times but did not receive a decision on their HAMP application.  (Id. ¶ 14).

On April 5, 2011, Plaintiffs received a letter from Shuping, Morse & Ross, LLP ("Shuping"), on behalf of BAC Home Loans Servicing, LP ("BACHL"). (Pls' Ex. 1).  The letter states that BACHL is the servicer of Plaintiffs' loan, Bank of New York Mellon, as Trustee for CWALT, Inc. ("BONYM"), is the creditor, the principal balance of Plaintiffs' loan is $179,488.21, and foreclosure proceedings were forthcoming.  (Id.).  Shuping sent Plaintiffs similar letters on

2

April 25 and May 5, 2011, containing the same information (Pls' Exs. 3, 4).

On April 13, 2011, MERS, as nominee for Pulte, assigned to BONYM "all right, title, interest, powers and options in, to and under [the Security Deed] as well as the land described therein and the indebtedness secured thereby." ([28.3] at 1).

On April 25, 2011, Plaintiffs sent Shuping a "Demand for Proof of Standing," requesting that Shuping provide documentation to support that BONYM is "the current beneficiary, . . . Holder in Due Course, and that it has [s]tanding to pursue collections and/or foreclosure in this matter." (Pls' Ex. 2).

On May 5, 2011, Shuping sent Plaintiffs a Foreclosure Advertisement and Notice of Sale Under Power ("May 5th NSUP"), which stated that Plaintiffs had defaulted on their loan obligations and that BONYM would conduct a foreclosure sale of the Property on the first Tuesday in June, 2011. (Pls' Ex. 21 at 2-3).

On June 6, 2011, Shuping notified Plaintiffs that the foreclosure sale scheduled for the next day had been withdrawn. (Pls' Ex. 5).

On June 13, 2011, Plaintiffs received from BANA a "Special Forbearance Agreement" modification offer. (Am. Compl. ¶ 19). The proposed modification would have more than doubled Plaintiffs' original monthly, interest-only payment. (Id.). BANA told Plaintiffs that they could accept the modification offer or refuse it and re-apply in thirty days. (Id. ¶ 20).

On July 1, 2011, BACHLS merged with its parent company, BANA.

On July 7, 2011, Plaintiffs received a letter (the "July 7th Letter") from BANA stating that "[e]ffective July 1, 2011, the servicing of home loans by [its] subsidiary – BAC Home Loans Servicing, LP, transfers to its parent company – Bank of America, N.A."  (Id. ¶ 21; Pls' Ex. 7).  The July 7th Letter stated that "[u]nder the federal Fair Debt Collections [sic] Practices Act and certain state laws, [BANA] is considered a debt collector" and "that this communication is from a debt collector attempting to collect a debt . . . ."  (July 7th Letter at 1).  The July 7th Letter asserted that, as of July 7, 2011, Plaintiffs owed $198,432.72 to "BANK OF NY (CWALT 2007-5CB) G1" and that they are required to dispute the debt within thirty (30) days or else BANA would assume it was valid.  (Id. at 3). The July 7th Letter further stated that if Plaintiffs dispute the debt, BANA will obtain verification of the debt and mail it to them.  (Id.).

On July 27, 2011, "Plaintiffs sent a certified letter disputing the debt, indicating that the purported creditor was unknown to Plaintiffs, and demanding that [BANA] provide 'documentation that BANK of NY is the legal holder in due course, along with proof of each and every transfer in the chain of assignments that resulted in BANK of NY attaining this status.'"  (Am. Compl. ¶ 22; Pls' Ex. 8). Plaintiffs claim they did not receive verification of the debt from BANA.

On September 8, 2011, Shuping, on behalf of BANA, sent Plaintiffs a letter (the "September 8th Letter") seeking to collect on Plaintiffs' indebtedness and

4

stating that foreclosure proceedings were forthcoming. (Id. ¶ 30; Pls' Ex. 9). The September 8th Letter states also that "[u]nless you notify us within 30 days from the date of your receipt of this notice that you dispute the validity of this debt or any portion thereof, we will assume the debt is valid." (Pls' Ex. 9).

On September 14, 2011, Plaintiffs replied to Shuping's September 8th Letter and again demanded "written documentation that CWALT, Inc. is indeed the current creditor/beneficiary, that it is indeed the Holder in Due Course, and that it has Standing to pursue collections and/or foreclosure in this matter." (Pls' Ex. 10).

On September 19, 2011, Shuping replied to Plaintiffs' demand for verification of their indebtedness and provided a "Payoff Demand Statement" from BANA and a copy of the promissory note Plaintiffs signed when they obtained their loan. (Pls' Exs. 11-13).

On September 26, 2011, Plaintiffs replied to the verification provided by Shuping, asserted that it was deficient, and stated that the Fair Debt Collection Practices Act requires Shuping and Defendants to "cease collection efforts until [they] are able to verify [their] claims" against Plaintiffs. (Am. Compl. ¶ 38).

On September 29, 2011, Shuping sent Plaintiffs a second Foreclosure Advertisement and Notice of Sale Under Power ("September 29th NSUP"), which provided similar information to the May 5th NSUP and stated that a foreclosure sale was scheduled for the first Tuesday in November, 2011. (Pls' Ex. 22).

5

On October 21, 2011, Plaintiffs, proceeding *pro se*, filed this action in the Superior Court of Cherokee County, Georgia, against Shuping, BANA, and BONYM. (Compl. [1.1 at 3-24] passim).[2] Plaintiffs asserted claims for violations of the Fair Debt Collection Practices, Truth in Lending, and Real Estate Settlement Procedures Acts; violation of a consent order entered into with the Comptroller of Currency; fraud; "bad faith;" equitable estoppel; "failure to prove damages;" "defective/fraudulent assignment;" "failure to prove holder in due course status;" "failure to prove standing;" "defective foreclosure closing notice;" and "direct contradiction by verbal representation." Plaintiffs sought a temporary restraining order "and/or" preliminary injunction enjoining foreclosure; a permanent injunction, until "standing of the Defendants" can be verified; production of the "Original Promissory note, with all 'wet letter' assignments and allonges;" proof of "any assignments, liens or any other instruments that prove any claims by an alleged Holders in Due Course;" validation of the debt; "court costs and court related fees;" and any other relief the Court deemed just and proper.

On November 30, 2011, BANA and BONYM removed the Cherokee

---

[2]   A "document filed *pro se* is 'to be liberally construed,' . . . , and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erikson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Mederos v. United States, 218 F.3d 1252, 1254 (11th Cir. 2000); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990). Although the Court construes *pro se* documents liberally, they must also comply with the procedural rules that govern pleadings. See McNeil v. United States, 508 U.S. 106, 113 (1993).

County action to this Court.  (Notice of Removal at 1).

On December 6, 2011, the parties consented to the dismissal of Shuping [4].

On December 7, 2011, Defendants moved to dismiss Plaintiffs' Complaint for failure to state a claim for relief [6].

On July 17, 2012, the Court granted Defendants' motion to dismiss with respect to all but one of Plaintiffs' claims ("July 17th Order") [24].  The Court concluded that, with the exception of their claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), all of Plaintiffs' claims were implausible, unfounded and without merit, and that amendment of these claims would be futile.  The Court permitted Plaintiffs an opportunity to amend their FDCPA claim and ordered:

> The amended complaint shall: (1) not exceed fifteen pages; (2) not include any claims that have been dismissed in this action; (3) explain how each Defendant qualifies as a "debt collector" within the meaning of the Act; (4) specify which section of the FDCPA was violated, how it was violated, when it was violated, and by which Defendant; and (5) clearly state the relief requested.

(July 17th Order at 51).

On August 2, 2012, Plaintiffs filed their Amended Complaint [26]. Plaintiffs argued that BANA is a debt collector under the FDCPA because their loan was already in default when BACHLS transferred servicing to BANA in July 2011.  Plaintiffs, without seeking leave to do so, also asserted additional claims for attempted wrongful foreclosure and negligence against BANA and BONYM.

On August 20, 2012, Defendants moved to dismiss Plaintiffs' Amended Complaint.

On September 4, 2012, Plaintiffs moved for leave to pursue their attempted wrongful foreclosure and negligence claims asserted in the Amended Complaint.

On February 15, 2013, the Court dismissed Plaintiffs' FDCPA claim because Plaintiffs again failed to show that BANA is a "debt collector" within the meaning of the FDCPA.  The Court found that Plaintiffs had defaulted on their loan obligations in April 2010, when BACHLS was their loan servicer; that BACHLS merged into BANA in July 2011; and that, as a result of the merger, BANA acquired the rights and interests of BACHLS.  That the merger occurred after Plaintiffs' default did not change that, by operation of law, BANA simply stands in the place of BACHLS as Plaintiffs' loan servicer.  The Court also found that, without more, BANA's statement in its July 7th Letter that BANA "is considered a debt collector," is not sufficient to establish that BANA is a debt collector under the FDCPA.

The Court in its February 15th Order also denied Plaintiffs' Motion for Leave to Amend their Complaint because it was untimely and, even if it were timely, Plaintiffs' Amended Complaint failed to state a viable claim for attempted wrongful foreclosure or negligence.  The Court found that the information contained in the Notices of Sale Under Power was not untrue or derogatory

because it is undisputed that Plaintiffs had defaulted on their loan obligations and, pursuant to the terms of the Security Deed, the Property securing that loan is subject to a foreclosure sale.  The Court also found that Plaintiffs failed to allege any specific duty owed to them by Defendants, or how Defendants purportedly breached this duty, and that any injury Plaintiffs may have suffered is solely attributable to Plaintiffs' own conduct in defaulting on their loan obligations.

On March 15, 2013, Plaintiffs filed their Motion for Reconsideration [36].

## II. DISCUSSION

### A. Legal Standard

"A motion for reconsideration made after final judgment falls within the ambit of either Rule 59(e) (motion to alter or amend a judgment) or Rule 60(b) (motion for relief from judgment or order)."  Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 n.5 (11th Cir. 1993).  The Court does not reconsider its orders as a matter of routine practice.  LR 7.2 E., NDGa.  The Court's Local Rules require the parties file any such motions for reconsideration "within twenty-eight (28) days after entry of the order or judgment."  Id.

Motions for reconsideration under Rule 59(e) are only appropriate where there is newly-discovered evidence or a need to correct a manifest error of law or fact.  See Hood v. Perdue, 300 F. App'x 699, 700 (11th Cir. 2008) (citing Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs,

9

916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996)); Arthur, 500 F.3d at 1343 ("The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact."); Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999).[3]

Motions for reconsideration under Rule 60(b) only are appropriate where there is "mistake, inadvertence, surprise, or excusable neglect," newly discovered evidence, fraud, a void judgment, or a judgment that has been satisfied or is no longer applicable. Fed. R. Civ. P. 60(b).

A motion for reconsideration should not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented in the previously-filed motion. See Arthur, 500 F.3d at 1343; O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992); Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003); see also Jones v. S. Pan Servs., 450 F. App'x 860, 863 (11th Cir. 2012) ("A motion to alter or amend a judgment cannot be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgment.");

---

[3]   Evidence that could have been discovered and presented on the previously-filed motion is not newly discovered. See Arthur v. King, 500 F.3d 1335, 1343-44 (11th Cir. 2007); see also Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997) ("We join those circuits in holding that where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion.").

Pres. Endangered Areas, 916 F. Supp. at 1560 ("A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time."). Whether to grant a motion for reconsideration under either Rule 59(e) or Rule 60(b) is within the sound discretion of the district court. See Region 8, 993 F.2d at 806.

B.   Analysis

Plaintiffs argue that the Court erred in dismissing their claims for wrongful foreclosure, "unfair and unjust behavior by Bank of America," and violations of the "One Satisfaction Rule," the FDCPA and TILA. Plaintiffs mostly reiterate the same arguments considered and rejected by the Court in its previous orders. To the extent Plaintiffs seek reconsideration of the claims dismissed in the July 17th Order, their motion is untimely under the Court's local rules. Plaintiffs' Motion for Reconsideration may be denied on these grounds alone. In light of their *pro se* status, however, the Court addresses each of Plaintiffs' arguments for relief from the Court's July 17th and February 15th Orders.[4]

1.   *Wrongful Foreclosure*

Plaintiffs contend that CWALT lacks authority to foreclose on the Property because it is not the holder of Plaintiffs' loan or their secured creditor. The

---

[4]   Plaintiffs do not move for reconsideration of the portion of Court's February 15th Order denying as untimely and futile their Motion for Leave to Amend their Complaint to assert claims for attempted wrongful foreclosure or negligence.

11

Supreme Court of Georgia has expressly rejected this argument and held that "the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed." You v. JP Morgan Chase Bank, 743 S.E.2d 428, 433 (Ga. 2013); see also Harris v. Chase Home Fin., LLC, No. 12-10406, 2013 WL 3940000 (11th Cir. July 31, 2013) (applying You).[5]  Plaintiffs have not, and cannot, state a claim for wrongful foreclosure based on their assertion that CWALT lacks standing to foreclose on Plaintiffs' property.  Plaintiffs' Motion for Reconsideration on this basis is denied.

### 2. *"Unfair and Unjust Behavior by Bank of America"*

Plaintiffs claim that BANA "lied, negotiated in bad faith, and treated Plaintiffs in an unjust and unethical manner."  Rather than support their claims with specific factual allegations, Plaintiffs rely on a consent decree between BANA and the Comptroller of the Currency, a Nevada lawsuit and a New York whistleblower action.  As the Court stated in its February 15th Order, Plaintiffs were not parties to those proceedings and Plaintiffs again fail to show how the facts of those cases are related to Plaintiffs' allegations here.  To the extent

---

[5]  To the extent Plaintiffs rely on Reese v. Provident Funding Assocs., LLP, 730 S.E.2d 551 (Ga. Ct. App. 2012), to support that only a secured creditor who holds both the security deed and promissory note can foreclose on a property, the Georgia Supreme Court vacated and remanded that decision for reconsideration in light of You.  See Reese, No. S12C2028, Order of May 20, 2013 (Ga. 2013).

12

Plaintiffs base their claim on Defendants' alleged failure to comply with HAMP, as alleged in the New York action, or violation of the Pooling and Servicing Agreement ("PSA") for the trust, as alleged in the Nevada action, the Eleventh Circuit has made clear that homeowners lack standing to assert these claims. See Miller v. Chase Home Fin., LLC, 677 F.3d 1113 (11th Cir. 2012) (dismissing plaintiff's claims for breach of contract, breach of implied duty of good faith and fair dealing, and promissory estoppel insofar as they are premised on alleged breach of defendant's HAMP obligations; private parties lack standing to pursue claims based on alleged violations of HAMP); Edward v. BAC Home Loans Serv., L.P., No. 12-15487, 2013 WL 4400102, at *2 (11th Cir. Aug. 16, 2013) (because plaintiffs were not parties to the PSA, they lack standing to assert claims based on its alleged violation). Plaintiffs have not, and cannot, state a viable claim against Defendants based on perceived violations of their HAMP obligations or the trust PSA.[6] Plaintiffs' Motion for Reconsideration on this basis is denied.

---

[6] Plaintiffs appear to argue generally that Defendants violated O.C.G.A. § 11-1-203, a provision of Georgia's Uniform Commercial Code which states that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Section 11-1-203 applies only to the sale of goods, not transactions involving real estate, and, even if it did, Section 11-1-203 does not support an independent cause of action. See, e.g., Lake Tightsqueeze, Inc. v. Chrysler First Fin. Serv. Corp., 435 S.E.2d 486 (Ga. Ct. App. 1993); Greenwald v. Columbus Bank & Trust Co., 492 S.E.2d 248 (Ga. Ct. App. 1997); see also B & W Pipeline, Inc. v. Newton Cnty. Bank, 353 S.E.2d 829, 831 (Ga. Ct. App. 1987) (UCC does not apply to transactions involving realty).

### 3. *Violation of the "One Satisfaction Rule"*

Plaintiffs assert that CWALT cannot show damages resulting from Plaintiffs' default on their loan because CWALT likely has recovered from its insurer, and from BANA, for similar losses arising from homeowners' defaults on their loan obligations. This argument is illogical and Plaintiffs fail to show how CWALT's recovery under an insurance policy absolves Plaintiffs of their obligations to make their loan payments. To the extent Plaintiffs argue that CWALT has been "made whole" because it received payment from another source as a result of Plaintiffs' default, Plaintiffs do not allege, and it does not logically follow, that any funds were paid to CWALT *on behalf of* Plaintiffs, and for their benefit, to extinguish Plaintiffs' repayment obligations. See O.C.G.A. § 11-3-602 ("an instrument is paid to the extent payment is made (i) by or on behalf of a party obliged to pay the instrument . . . ."). Plaintiffs were not parties to, or third-party beneficiaries of, the purported insurance policy or settlement agreement and they cannot assert a claim based on those instruments. See O.C.G.A. § 9-2-20(b) (only persons entitled to enforce a contract are parties to the contract and those third-parties intended to be beneficiaries of the contract); Danjor, Inc. v. Corporate Constr., Inc., 613 S.E. 2d 218, 220 (Ga. Ct. App. 2005). The Court has already considered and rejected this nonsensical argument and Plaintiffs' assertion that this claim should not be dismissed "[g]iven the bias shown in dismissing other valid claims," does not

14

warrant reconsideration of the Court's July 17th Order dismissing this claim. Plaintiffs' Motion for Reconsideration on this basis is denied.

    4.    *Violation of the FDCPA*

Plaintiffs next argue that the Court has inconsistently and improperly applied Reese v. Ellis, Painter, Ratteree & Adams, LLP, 678 F.3d 1211 (11th Cir. 2012) in this action. In Reese, the defendant argued that it was not engaged in debt-collection activity under the FDCPA because the purpose of the letters it sent to the plaintiffs was to inform them that the holder of their security deed intended to foreclosure on their property. Reese, 678 F.3d at 1217. The Eleventh Circuit held that a dual-purpose communication designed to give a borrower notice of foreclosure and demand payment on the underlying debt may also relate to the collection of a debt within the meaning of Section 1692e. Id. That the letter and documents relate to the enforcement of a security interest, which is not "debt-collection activity," did not prevent them from also relating to the collection of a debt. Id.

In its July 17th Order, the Court, applying Reese, rejected Defendants' argument that Plaintiffs had not, and could not, state a claim against them for violation of the FDCPA solely because they were foreclosing on a security interest. The Court stated that, while BANA's statements that "this communication is from a debt collector attempting to collect a debt" is relevant to Plaintiffs' claim, it does

not establish that BANA is a debt collector within the meaning of the FDCPA or satisfy Plaintiffs' procedural pleading requirements.  The Court observed that, in Reese, even though the collection notice contained similar language, the court was still required to discuss whether the complaint plausibly alleged that the defendant was a "debt collector" within the meaning of the FDCPA.

The Court reached the same conclusion in its February 15th Order.  The Court again found that BANA's statement, without more, is not sufficient to establish that BANA is a debt collector under the FDCPA.  The Court also observed that, because Plaintiffs admit that the July 7th Letter was not a dual-purpose letter, Plaintiffs had not shown that BANA was engaged in "debt-collection activity" under the FDCPA.

Plaintiffs appear to conflate the definitions of "debt collector" and "debt collection activity" under the FDCPA, and their tortured reading of the Court's Orders simply does not support their claim.  To be clear, the two requirements—that a defendant is a "debt collector" to whom the FDCPA applies, and that it has engaged in "debt collection activity" which the FDCPA regulates—are separate, and independent, elements of a valid FDCPA claim.  See Reese, 678 F.3d at 1216 ("[T]o state a plausible FDCPA claim under Section 1692e, a plaintiff must allege, among other things, (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection."); Buckley v. Bayrock Mortg.

Corp., No. 1:09-cv-1387-TWT, 2010 WL 476673, at *6 (N.D. Ga. Feb. 5, 2010) (plaintiff alleging a claim under FDCPA must show he has been the object of debt collection activity arising from a consumer debt; defendant attempting to collect debt qualifies as a "debt collector;" and defendant engaged in prohibited act or failed to perform a requirement under the FDCPA).

Here, because Plaintiffs fail to show that BANA is a "debt collector" within the meaning of the FDCPA, they cannot state a claim for violation of the FDCPA. See, e.g., McWeay v. Citibank, N.A., 521 F. App'x 784 (11th Cir. 2013) (Mortgage loan servicer was not a "debt collector" within meaning of FDCPA, thus precluding mortgagor's claim against servicer for violation of FDCPA by failing to respond to mortgagor's request for verification of her debt).  Plaintiffs' motion for reconsideration on this basis is denied.

     5.    *Violation of TILA*

In its July 17th Order, the Court dismissed Plaintiffs' claim for violation of TILA because they failed to allege which defendant allegedly violated TILA or that that entity is a "creditor" under TILA.  The Court also found that Plaintiffs did not seek damages, and that the injunctive relief Plaintiffs sought is not available to private litigants under TILA.  In their Motion for Reconsideration, Plaintiffs state that "all of these [defects] are easily cured, and given that this was their first Complaint and filed *pro se*, the Court should have allowed them to file an amended

17

complaint." Plaintiffs, having received Defendants' motion to dismiss, had notice of, and have failed to cure, their pleading defects since December 2011. To the extent they now seek to re-plead their TILA claim, Plaintiffs' request is untimely and they fail to provide any details to support their alleged claim. Plaintiffs further have not, and cannot, allege a TILA claim against BANA because BANA, as Plaintiffs' loan servicer, does not own Plaintiffs' loan. See 15 U.S.C. § 1641(f)(1) ("A servicer . . . shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation."); id. § 1641(g) ("not later than 30 days after the date on which a mortgage loan is sold . . . to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . . .").

To the extent Plaintiffs intended to assert their TILA claim against BONYM, Plaintiffs' position throughout this litigation has been that BONYM is not their creditor and not the holder of their loan. There simply are no allegations to support a TILA claim against BONYM because, by Plaintiffs' own allegations, BONYM is not their creditor. See 15 U.S.C. § 1641(g)(1) ("not later than 30 days after the date on which a mortgage loan is sold . . . to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . . .").[7] Plaintiffs' motion for reconsideration on this basis is denied.

---

[7] The Court notes also that Section 1641(g)(1) only applies to mortgage loans

Plaintiffs have not presented any grounds upon which to support granting them relief from the Court's July 17th and February 15th Orders. Plaintiffs' Motion for Reconsideration is denied. To the extent Plaintiffs also request leave to amend their Complaint, for the reasons already discussed, all of Plaintiffs' claims are implausible, unfounded and without merit, and amendment is required to be denied. See Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1255 (11th Cir. 2008) ("Because justice does not require district courts to waste their time on hopeless cases, leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim.").[8]

---

sold after May 20, 2009. See Pub.L. No. 111–22 § 404, 123 Stat. 1632, 1658. Plaintiffs do not allege when their loan was sold, or when the alleged TILA violation occurred.

[8]   Plaintiffs also seek "clarification" of whether the Court's dismissal of their claims was with or without prejudice. With the exception of their TILA claim against BONYM, the Court found that Plaintiffs have not, and cannot, state a viable claim for relief against Defendants. Plaintiffs' claims for violations of the FDCPA, RESPA, and the consent order entered into with the Comptroller of Currency, fraud, "bad faith," equitable estoppel, "failure to prove damages," "defective/fraudulent assignment," "failure to prove holder in due course status," "failure to prove standing," "defective foreclosure closing notice," "direct contradiction by verbal representation," wrongful attempted foreclosure and negligence, and violation of TILA against BANA, fail as a matter of law and these claims are dismissed with prejudice. The Court found that Plaintiffs failed to allege any facts to support a TILA claim against BONYM because TILA only applies to a plaintiff's creditors and by Plaintiffs' own allegations, BONYM is not their creditor. Although doubtful, the Court cannot conclude that Plaintiffs' TILA claim against BONYM necessarily fails as a matter of law and this claim is dismissed without prejudice.

To the extent Plaintiffs seek "clarification" of "whether attorneys' fees are to be included" in the Court's Judgment, Defendants, as the prevailing parties, have

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Reconsideration [36] is **DENIED.**

**SO ORDERED** this 8th day of November, 2013.

*William S. Duffey*
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

not moved for an award of attorney's fees.  See Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."); Fed. R. Civ. P. 54(d)(2) ("A claim for attorney's fees and related nontaxable expenses must be made by motion . . . .").

Plaintiffs also ask whether dismissal applies to BONYM "since Mellon Bank was only attached to this lawsuit due to their being the Trustee to the purported holder of the note." (Br. in Supp. at 21).  The Court has dismissed Plaintiffs' claims against "The Bank of New York Mellon (as Trustee for CWALT, Inc.)," the defendant Plaintiffs named in their Complaint.  To the extent Plaintiffs argue that "it would be unfair and unjust for Mellon Bank to be precluded from future actions . . . since any future actions will involve a new loan servicer . . . and a new series of events," the Court's role is limited to resolving actual cases and controversies between the parties to the action before it.  See Preiser v. Newkirk, 422 U.S. 395, 401 (1975).  The Court declines to render an advisory opinion regarding the propriety of any future action or claim.  Insofar as Plaintiffs also "move the Court for Judicial Notice that [Select Portfolio Services, their new loan servicer] be considered a Debt Collector under the FDCPA for any future court actions," Select Portfolio Services is not a party to this action and the Court is unable to grant Plaintiffs the relief they seek.  See Preiser, 422 U.S. at 401.